**COMMONWEALTH of Pennsylvania,**

v.

**Aaron Daniel RABOLD, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 14, 2006.
Filed March 8, 2007.

Bradley W. Weidenbaum, Brodheadsville, for appellant.

Colleen Mancuso, Asst. Dist. Atty., Stroudsburg and Elmer D. Christine Jr., Asst. Dist. Atty., Effort, for the Com., appellee.

Debra Rabold, Effort, amicus curiae.

BEFORE: STEVENS, KLEIN, and PANELLA, JJ.

OPINION BY PANELLA, J.:

¶ 1 Appellant, Aaron Daniel Rabold, appeals from the judgment of sentence [1] entered on August 11, 2005, by the Honorable Margherita Patti Worthington, Court of Common Pleas of Monroe County. After careful review, we affirm.

¶ 2 In March of 2003, Donna Middagh, the victim, lived with her fiancé, Nathaniel, their young children, and Nathaniel's younger brother, Rabold. The victim and Rabold often fought about his habit of leaving his handguns on the couch and floor of the living room where they were easily accessible to the young children. The victim and Rabold had a verbal confrontation about this very issue on March 12, 2003. Following the confrontation, the victim left the house, but returned after midnight and went to bed with her fiancé, Nathaniel. Shortly thereafter, the victim awoke to a nightmare: Rabold was straddling her and stabbing her in the mouth and cheek with a knife while calling her a "[f]'ing bitch." N.T., Trial, 3/29/05, at 33. At one point, the knife went through the victim's left cheek. The victim struggled and was able to wake up her fiancé. By this time, Rabold had gotten off the victim, but had also pulled out a handgun and pointed it at the victim. The victim, who was bleeding profusely, was able to escape the room and call 911 to report the attack.

¶ 3 The police soon arrived and arrested Rabold. The victim was subsequently transported to the hospital where she remained for over a week and underwent two surgeries to repair injuries from the attack.[2]

¶ 4 Following a jury trial, Rabold was found guilty but mentally ill of attempted homicide,[3] guilty but mentally ill of aggravated assault,[4] and guilty of possession of an instrument of crime.[5] On August 11, 2005, the sentencing court conducted a hearing pursuant to § 7301 of the Mental Health Procedures Act. See 50 PA. STAT. § 7301. At the conclusion of the hearing, Rabold was sentenced to a term of imprisonment of fourteen to twenty-eight years on the attempted homicide conviction and to a concurrent term of not less than one month nor more than one year for the possession of an instrument of crime conviction.[6] Thereafter, Rabold filed post-sentence motions, which were denied by the trial court on March 1, 2006. This timely appeal followed.

---

1. Rabold purports to appeal from the order denying his post-sentence motions. In *Commonwealth v. Chamberlain*, 442 Pa.Super. 12, 658 A.2d 395 (1995), we explained that "the order denying post-sentence motions acts to finalize the judgment of sentence for purposes of appeal. Thus, the appeal is taken from the judgment of sentence, not the order denying post-sentence motions." *Id.*, at 397. We have corrected the caption accordingly.

2. Among other things, the victim lost six teeth as a result of the attack and sustained injuries to her cheek and tongue.

3. 18 PA. CONS.STAT.ANN. §§ 314, 901, 2501.

4. 18 PA. CONS.STAT.ANN. §§ 314, 2702.

5. 18 PA. CONS.STAT.ANN. § 907.

6. The sentencing court determined that the conviction for aggravated assault merged for sentencing purposes.

¶5 On appeal, Rabold raises the following issues for our review:

1. WHETHER THE VERDICT WAS BASED UPON INSUFFICIENT EVIDENCE?

. . .

2. WHETHER THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE?

. . .

3. WHETHER JURY INSTRUCTION [SIC] IMPERMISSIBLY ALLOWED THE JURY TO CONVICT ON A STANDARD OF PROOF BEYOND A REASONABLE DOUBT?

. . .

Appellant's Brief, at 4.

■ ¶6 Rabold first contends that the Commonwealth presented insufficient evidence to sustain his convictions for guilty but mentally ill of attempted homicide and aggravated assault. Our standard of review regarding a claim of insufficiency of the evidence is well-settled: We view the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom. *See Commonwealth v. Lambert*, 795 A.2d 1010, 1014 (Pa.Super.2002), *appeal denied*, 569 Pa. 701, 805 A.2d 521 (2002). Our scope of review is *plenary*. *See Commonwealth v. Weston*, 561 Pa. 199, 203 n. 8, 749 A.2d 458, 460 n. 8 (2000). We may not weigh the evidence and substitute our judgment for the fact-finder. *See Commonwealth v. Derr*, 841 A.2d 558, 560 (Pa.Super.2004). A mere conflict in the testimony of the witnesses does not render the evidence insufficient because "it is within the province of the factfinder to determine the weight to be given to the testimony and to believe all, part, or none of the evidence." *Commonwealth v.*

*Moore*, 436 Pa.Super. 495, 648 A.2d 331, 333 (1994) (citations omitted), *appeal denied*, 540 Pa. 580, 655 A.2d 512 (1995).

¶7 Specifically, Rabold argues that the evidence is insufficient to sustain his convictions as a finding of guilty but mentally ill negates the *mens rea* requirements necessary to impose criminal liability for criminal homicide and aggravated assault. Rabold contends that he could not perform an act with the requisite *mens rea* if he "did not have the substantial capacity to control his behavior." Appellant's Brief, at 19. This argument is specious.

¶8 Our Supreme Court has held that a guilty but mentally ill conviction "does not negate [an appellant's] intent to commit a criminal act." *Commonwealth v. Santiago*, 579 Pa. 46, 78, 855 A.2d 682, 701 (2004). Furthermore, in *Commonwealth v. Trill*, 374 Pa.Super. 549, 543 A.2d 1106 (1988), *appeal denied*, 522 Pa. 603, 562 A.2d 826 (1989), this Court explained that

> the legislature has determined that persons classified as guilty but mentally ill either lack the capacity to appreciate the wrongfulness of their conduct or are unable to conform their conduct to the requirements of the law. *However, the General Assembly determined that this classification of individuals is capable of possessing the requisite mens rea for the attachment of criminal responsibility.* In other words, those individuals who have been found guilty but mentally ill are both 'sick' and 'bad' (i.e., criminally responsible).

*Id.*, at 1123 (emphasis added).

■ ¶9 Accordingly, Rabold's guilty but mentally ill convictions do not extinguish the requisite *mens rea* to impose criminal liability.[7] *See id.* Thus, Rabold's argument is wholly without merit.

7. In *Trill,* we explained the importance of a finding of insanity for a defendant as follows:

¶ 10 Rabold's other argument in support of his contention that the Commonwealth presented insufficient evidence is based on the conflicting expert testimony presented at trial. At trial, Rabold's expert, Richard E. Fischbein, M.D., who diagnosed Rabold with a psychotic disorder not otherwise specified, testified that Rabold intended to stab the victim, but that he "did not appreciate that what he was doing was wrong at the time due to mental illness." N.T., Trial, 3/30/05, at 83. As such, Dr. Fischbein testified that in his opinion, given to a reasonable degree of medical certainty, Rabold was legally insane at the time of the attack. *See id.*, at 88.

¶ 11 The Commonwealth's expert, Robert L. Sadoff, M.D., concurred with Dr. Fischbein's diagnosis that Rabold suffers from a psychotic disorder not otherwise specified, but testified that in his opinion, given to a reasonable degree of medical certainty, that Rabold was not legally insane at the time of the attack, but, rather, "lacked substantial capacity to conform his conduct to the requirements of the law." *Id.*, at 130. In other words, that he is guilty but mentally ill pursuant to 18 Pa. Cons.Stat.Ann. § 314.

¶ 12 Dr. Fischbein's testimony obviously conflicts with the opinion of Dr. Sadoff as the two experts reached different conclusions. As the trial court notes, however, in its thoughtful and well-written opinion: "[W]hile psychiatric testimony is of probative value, it is within the province of the jury to determine the credibility and weight of such evidence...." Trial Court Opinion, 3/1/06, at 15 (quoting *Trill,* 543 A.2d at 1112). The jury was free to re-solve the conflict in the expert testimony in the Commonwealth's favor. *See Moore,* 648 A.2d at 333. As such, Rabold's argument is meritless.

 ¶ 13 Rabold next maintains that the verdict was against the weight of the evidence. Our standard of review for a challenge to the weight of the evidence is well-settled: The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses. *See Commonwealth v. Champney,* 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied,* 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004). As an appellate court, we cannot substitute our judgment for that of the finder of fact. *See id.* Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. *See Commonwealth v. Passmore,* 857 A.2d 697, 708 (Pa.Super.2004), *appeal denied,* 582 Pa. 673, 868 A.2d 1199 (2005). Our appellate courts have repeatedly emphasized that "[o]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence." *Commonwealth v. Forbes,* 867 A.2d 1268, 1273 (Pa.Super.2005) (internal quotes omitted).

¶ 14 Furthermore,

> where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is

---

On the other hand, defendants who have been adjudged insane are defined as laboring under a defect of reason so grave as not to have known the nature and quality of the acts they were doing, or if they did know the nature and quality of the acts, they were unable to comprehend that what they were

doing was wrong. *In this classification, the legislature found that such individuals were incapable of forming the intent necessary to impose criminal liability.* Stated more simply, these individuals are "sick," but not "bad."

543 A.2d at 1123 (emphasis added).

against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Champney,* 574 Pa. at 444, 832 A.2d at 408 (citation omitted).

¶ 15 Rabold's weight of the evidence claim is predicated on the conflicting expert testimony. The trial court rejected this claim noting that the jury was free to choose to believe the Commonwealth's expert. *See* Trial Court Opinion, 3/1/06, at 18–19. We find no abuse of discretion.

 ¶ 16 Lastly, Rabold contends that the jury instruction impermissibly allowed the jury to convict on a standard short of proof beyond a reasonable doubt. Rabold's argument is centered on the assertion that 18 Pa. Cons.Stat.Ann. §§ 314 and 315 are confusing and contradictory and, therefore, violate his due process rights. Rabold concedes that this very argument has been rejected by this Court, but asks us to "revisit[ ] [the issue] as the statutes are so clearly confusing." Appellant's Brief, at 23.

¶ 17 At trial, the trial court instructed the jury on the concepts of legal insanity and guilty but mentally ill using Pennsylvania Suggested Standard Jury Instruction (Criminal) 5.01A(1). "This instruction has been specifically approved by this court, and correctly sets forth the present state of the law in the Commonwealth." *Commonwealth v. duPont,* 730 A.2d 970, 980 (Pa.Super.1999) (citations omitted), *appeal denied,* 561 Pa. 669, 749 A.2d 466 (2000), *cert. denied,* 530 U.S. 1231, 120 S.Ct. 2663, 147 L.Ed.2d 276 (2000). Furthermore, in *duPont,* this Court rejected the very same argument advanced by Rabold here, holding that

[t]he allocation of the burden of proof where insanity is a defense has been clearly defined, and challenges to the constitutionality of the relevant statutes have previously been rejected. We therefore conclude there is no merit to appellant's argument that the application of Sections 314 and 315 was unconstitutional.

*Id.,* at 979. As mentioned, Rabold invites us to "revisit" the holding in *duPont.* Of course, we cannot accept Rabold's invitation as we, a three judge panel, are bound by the decision in *duPont* and cannot overrule it.[8] *See, e.g., Gorski v. Smith,* 812 A.2d 683, 702 n. 8 (Pa.Super.2002), *appeal denied,* 579 Pa. 692, 856 A.2d 834 (2004).

¶ 18 Judgment of sentence affirmed. Jurisdiction relinquished.

---

**8.** We also cannot ignore the fact that review of *duPont* was rejected by the Pennsylvania Supreme Court and the United States Supreme Court.